**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**MICROSOFT CORPORATION,**

      Plaintiff,

      v.                 CIVIL ACTION NO. 4:05cv106

**#9 SOFTWARE, INC., et al.,**

      Defendants.

*MEMORANDUM OPINION & ORDER*

Before the Court is the Motion of #9 Software, Inc., ("Defendant #9 Software"), Shahan K. Lee, also known as Shawn Lee (" Defendant Lee"), and Siew Pui Singleton ("Defendant Singleton") (collectively, "Defendants") to Dismiss Counts Five and Seven of a Complaint filed by Microsoft Corporation ("Plaintiff"). Defendants move for dismissal of Counts Five and Seven pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' Motion to Dismiss Counts Five and Seven is **GRANTED**.

**I. FACTS AND PROCEDURAL HISTORY**

For the purposes of the motion, the Court assumes the following facts are true. Plaintiff is a Washington Corporation that develops, markets, distributes, and licenses computer software. Specifically, Plaintiff develops, markets, distributes, and licenses the following software packages directly involved in this matter: (1) Microsoft Windows 2000 Professional ("Windows 2000 Pro) and (2) Microsoft Windows XP ("Windows XP"). Microsoft Certificates of Authenticity and Certificate of Authenticity Labels (collectively, "Certificates of Authenticity")

are distributed with the above named software packages in order to verify the authenticity of the software.

Defendant #9 Software is a Virginia Corporation engaged in the business of advertising, marketing, installing, offering, and distributing computer software.  Defendants Lee and Singleton own, operate, or otherwise control Defendant #9 Software by way of officer, shareholder, or director status.  Plaintiff alleges that Defendants engaged in the regular distribution of stand-alone Certificates of Authenticity, meaning that Defendants distributed Certificates of Authenticity without the Windows 2000 Pro and Windows XP software packages that Plaintiff intended the Certificates of Authenticity to accompany.

Based upon information and belief, on or about June 21, 2000, Plaintiff sent a letter to Defendants asking them to cease and desist their distribution of counterfeit software.  Plaintiff alleges that Defendants failed to curtail their actions, and continued to engage in their illegal practices after the initial warning letter.  Specifically, on or about January 2002, Plaintiff received a counterfeit Windows 2000 manual that Defendants distributed to a customer.  Based on this and their continued suspicion, Plaintiff hired investigators to look into Defendants' conduct.  In September 2004, Defendants distributed nineteen stand-alone Certificates of Authenticity to the investigators.  Thereafter, Plaintiff sent a letter, dated January 7, 2005, informing Defendants that a federal law made it illegal to traffic in illicit Certificates of Authenticity.  Notwithstanding the receipt of the letter, in March 2005, Defendants distributed to investigators four more illicit Certificates of Authenticity for Windows 2000 Pro software packages.  On March 25, 2005, Plaintiff sent a letter to Defendants, again, warning them that the distribution of illicit Certificates of Authenticity was illegal, and demanding that Defendants cease and desist their illegal conduct.

Defendants failed to take heed to the warning, and again distributed fifteen Certificates of Authenticity to investigators on May 2005.  After the above mentioned letters and warnings, Plaintiff filed a Complaint in this Court on July 6, 2005.  Specifically, Plaintiff filed suit against Defendants for seven separate claims: (1) Trademark Infringement in violation of 15 U.S.C. § 1114, (2) False Designation of Origin, False Description and Representation of Microsoft Packaging in violation of 15 U.S.C. § 1125, (3) Anti-Counterfeiting Amendments Act of 2004 in violation of 18 U.S.C. § 2318, (4) Virginia Common Law Unfair Competition, (5) Virginia Consumer Protection Act, (6) Imposition of a Constructive Trust upon Illegal Profits, and (7) Accounting.  Defendants filed their answer on September 20, 2005, along with a Motion to Dismiss for failure to state a claim for Counts Five and Seven.  Plaintiff filed a response on October 4, 2005.  On October 7, 2005, Defendants filed a reply to Plaintiff's response.  This matter is now ripe for determination by the Court.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A court will grant a motion to dismiss if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982) (quoting *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969)).  A court reviewing a motion to dismiss relies solely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).  In a motion to dismiss, the court considers the facts in the light most favorable to the plaintiff, and assumes that the facts alleged in the plaintiff's complaint are

true. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 229 (4th Cir. 2004) (citing *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 n.4 (4th Cir.1993)).

If the parties present and the court does not exclude matters outside the pleadings such as documents and deposition transcripts, the motion to dismiss is treated as one for summary judgment. Fed. R. Civ. P. 12(c); *Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir. 2004) (citing *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 n.7 (4th Cir. 1988)).

### III.  DISCUSSION

**A.    Count Five - Virginia Consumer Protection Act**

Defendants move for dismissal of Count Five on three separate grounds. First, Defendants allege that Plaintiff has no standing to sue for violations under the Virginia Consumer Protection Act ("VCPA") because it was not a person engaged in a consumer transaction. Second, Defendants argue that the claim under the VCPA is barred by the statute of limitations. Finally, Defendants argue that Plaintiff fails to allege all elements to properly state a claim under the VCPA. Given that the issue of standing will be determinative of whether the Court will need to address Defendants' other grounds for dismissal, the Court will first address the issue of standing.

**Standing to Sue under VCPA**

Defendants argue that Plaintiff lacks standing to sue for violations under the VCPA because Plaintiff is not a member of the consuming public, and because none of the transactions Plaintiff alleges constitute a "consumer transaction" as defined by the statue. In response, Plaintiff asserts that it falls within the definition of "person" as defined by the VCPA, thus inevitably making the alleged transactions consumer in nature.

The VCPA is legislation whose goal is to "promote fair and ethical standards of dealings between suppliers and the consuming public." VA. CODE ANN. § 59.1-200 (2005). The VCPA makes unlawful certain acts committed by a supplier against a person engaged in a consumer transaction. *Id*. Accordingly, in addressing the parties competing arguments on standing, the first issue the Court must determine is whether Plaintiff is a person within the meaning of the VCPA. Assuming Plaintiff is a person, the Court must then determine whether the transactions that form the basis of Plaintiff's Complaint are consumer transactions as defined by the VCPA. The Court addresses each issue in turn.

**1.     Person within the meaning of the VCPA**

Any person who suffers a loss in connection to a consumer transaction based on prescribed violations may bring suit under the VCPA. VA. CODE ANN. § 59.1-204 (2005). The statute defines "person" to include "any natural person, corporation, trust, partnership, association and any other legal entity." VA. CODE ANN. § 59.1-198 (2005).

In this case, Plaintiff is a Washington corporation. Accordingly, based on the VCPA's plain language definition of "person," it is clear that Plaintiff is a person within the meaning of the statute. As such, the next inquiry is whether Plaintiff was engaged in a consumer transaction.

**2.     Consumer Transaction**

A person may bring suit under the VCPA, where the person is engaged in a consumer transaction. VA. CODE ANN. § 59.1-200 (2005). The VCPA defines a consumer transaction as one that deals with the advertisement or sale of goods or services "to be used primarily for personal, family or household purposes." VA. CODE ANN. § 59.1-198 (2005).

Defendants argue that, given the nature and circumstances of the transaction, Plaintiff did not purchase the Certificates of Authenticity for a "personal, family, or household purpose," but rather for the purposes of bringing suit. As such, Defendants maintain that Plaintiff was not engaged in a consumer transaction, and thus has no standing to bring suit under the VCPA. In response, Plaintiff asserts that its motive in making the purchases is irrelevant, given that, like other purchasers, it paid money for the product. Plaintiff cites to *Merriman v. Auto Excellence, Inc.*, 55 Va. Cir. 330, (Richmond Cir. Ct. 2001) and *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592 (4th Cir. 1985) to support its argument.

In *Merriman*, the plaintiff brought suit against a car dealer for misrepresentations made about a used car that plaintiff purchased for his personal use. *Merriman*, 55 Va. Cir. at 330. The Court held that privity was an invalid defense, and that the plaintiff's claim under the VCPA was proper given that it was in connection with a consumer transaction. *Id*. Similarly, in *Gill* the plaintiff sued under the VCPA for misrepresentations made about a fire alarm system that was purchased for a household use. *Gill*, 773 F.2d at 592-93. The court held that plaintiff's insurance company had the right of subrogation, because it stood in the shoes of the plaintiff to the extent it paid insurance claims based on Defendants' VCPA violation. *Id*. at 598. Although Plaintiff cites the above cases for support, both cases fail to sustain Plaintiff's arguments.

Plaintiff's case is distinguishable. Unlike *Merriman* and *Gill*, Plaintiff was not purchasing the Certificates of Authenticity to use for a personal, family, or household purpose. Rather, the purchases were made for investigatory purposes, namely to determine whether Defendants were engaging in the sale of Certificates of Authenticity without the required software. Further, unlike *Gill*, Plaintiff can not argue that it is stepping into the shoes of a

6

potential consumer. The plaintiff in *Gill*, as the insurer, paid money on the insurance policy as a result of the misrepresentations made to the plaintiff by the fire alarm system company. In this case, Plaintiff's purchases were made on its own behalf, not on the behalf of potential consumers of its software.

As recognized by both parties, the intent of the VCPA is to protect the general consuming public by promoting fair and ethical standards of dealings between suppliers and consumers. VA. CODE ANN. § 59.1-200 (2005). Although a corporation may bring suit under the VCPA, it is clear that the corporation must be engaged in a consumer transaction. VA. CODE ANN. § 59.1-200 (2005). The unambiguous statutory language advances the understanding that the legislature intended to place a limitation on the right to bring suit to those who have purchased goods for personal, family, or household use. In this case, Plaintiff was not purchasing the Certificates of Authenticity for a consumer purpose as intended by the VCPA. Accordingly, the Court finds that Plaintiff was not engaged in a consumer transaction. As a result, Plaintiff lacks standing to bring suit under the VCPA, and thus Count Five is **DISMISSED**.[1]

**B.    Count Seven  - Accounting**

Defendants move for dismissal of Count 7 on the basis that an accounting is not a separate claim under either 18 U.S.C. § 2318 or 15 U.S.C. § 1117 (the "Lanham Act"), but rather a remedy the Court may impose to accurately determine profits, if necessary. In response, Plaintiff makes a conclusory argument that because 18 U.S.C. § 2318 and the Lanham Act allow

---

[1] Defendants submit two other grounds for dismissal of Count Five: (1) that the claim under the VCPA is barred by the statute of limitations, and (2) that Plaintiff fails to allege all elements to properly state a claim under the VCPA. Having dismissed Plaintiff's claim under the VCPA for lack of standing, Defendants' other arguments are moot.

for the recovery of profits, Plaintiff is entitled to a separate claim for accounting to accurately determine the profits. The Court finds Plaintiff's argument unpersuasive.

Subject to the principles of equity, 18 U.S.C. § 2318 and the Lanham Act allow a plaintiff to recover profits, damages, and court costs where a violation of the statutes are established. *See* 18 U.S.C. § 2318 (2005); 15 U.S.C. § 1117 (2005). As such, these forms of recovery qualify as "remedies" provided under the statute. *See* BLACK'S LAW DICTIONARY, (the definition of "remedy" is "the enforcement of a right or the redress of an injury, esp. monetary damages, that a party asks of a court."). There is a distinct difference between a cause of action and a remedy. *Wilson v. Gregory,* 189 200 S.E. 358, 360 (1938); *see Web Printing Controls Co., Inc. v. Oxy-Dry Corp.,* 906 F.2d 1202, 1204 (7th Cir. 1990) (finding that the district court had "confused a Lanham Act violation with a Lanham Act remedy).

In this case, neither 18 U.S.C. § 2318 nor the Lanham Act set forth a separate cause of action for accounting. *See* 18 U.S.C. § 2318 (2005); 15 U.S.C. § 1117 (2005). Further, in addition to the separate claim for accounting submitted in Count Seven, Plaintiff also prays for relief by means of accounting in its claims under the Lanham Act and 18 U.S.C. § 2318, as framed in Counts One and Three respectively. As a result, the Court is aware, through both the Complaint and the statutes, that an accounting may serve as a remedy under the statute, but not a separate cause of action. Accordingly, the Court will treat Plaintiff's request for accounting as a potential remedy to be imposed, if necessary, to accurately determine Plaintiff's damages, if any. Accordingly, Plaintiff's separate claim for accounting in Count 7 is unnecessary, and Count 7 of Plaintiff's Complaint is hereby **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts Five and Seven is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 15, 2005